

**U.S. Department of Justice**

Kenneth L. Wainstein
United States Attorney

*District of Columbia*

---

*Judiciary Center*

*555 Fourth St., N.W.*
*Washington, D.C.  20530*

June 6, 2005

James W. Beane, Esq.
2715 M Street, N.W., Suite 250
Washington, D.C. 20007

        Re:    United States v. Simmeon D. Williams
               Case No. 05-204 (JR)

Dear Mr. Beane,

      We write to provide discovery in the above-captioned case.  Please review this letter and the various materials and information we have provided and call on one of us if you have any questions or concerns about discovery.  We will address whatever matters you raise directly.  Our practice and preference is to make every effort to resolve discovery issues informally.  Although we understand that occasionally issues will arise that will require resolution by the Court, our experience has been that the vast majority of discovery issues can and should be resolved by counsel acting reasonably and in good faith.

      Case Background.  As you may know, this case has its roots in Superior Court.  Williams was arrested on October 3, 2003, and had his first appearance the next day.  The Superior Court case number was F-6163-03.  Williams was charged in Superior Court with possession with intent to distribute cocaine.  He was represented by Paul A. Signet, Esq.  Williams had his initial appearance on October 4, 2003.  At that appearance the government requested a hold, which was granted, and a preliminary hearing was scheduled for October 10, 2003.  At that hearing probable cause was found, Williams was ordered released into the Heightened Supervision Program, and the case was bound over to the grand jury.  A transcript of the preliminary hearing is enclosed for your review.  On October 24, 2003, for reasons unrelated to its merits, the case was dismissed by the government.

      Substantive Statements Incident to Arrest on October 3, 2003.  Incident to his arrest on October 3, 2003, Williams was advised of his Miranda rights and declined to waive them.  He refused to sign the Miranda rights card, and a copy that card signifying his refusal is enclosed.  Given Williams's assertion of his Miranda rights, he was not interrogated following his arrest and he made no substantive post-arrest statements.

      Statements During Booking on October 3, 2003.  As is indicated on the P.D. 163 that was prepared incident to his arrest on October 3, 2003, a copy of which is enclosed, Williams

provided some biographical information in response to routine booking questions. He provided a home address of XXXX XXXXXXXX He provided a home telephone number of XXXX XXXXXXXX. He said that he was born in XXXX XXXXXXXX on XXXX XXXXXXXX He provided a Social Security Number of XXXX XXXXXXXX. He estimated his height at XXXX" and his weight at XXXX lbs. He said he was unemployed. He refused to provides the names of his immediate family members, other relatives, or friends. He said that he had never served in the military and chose not to make a telephone call.

<u>Statements to PSA Representatives on October 3, 2003</u>  Williams was interviewed by Michelle Ann Sioli, a representative of the Pretrial Services Agency, in connection with his initial appearance in Superior Court on October 4, 2003. A Report was generated following this interview, a copy of which is enclosed. In large measure the Pretrial Services Report contains the same sort of information that Williams provided when he was booked by the police incident to his arrest. Williams provided a full name of Simmeon Duane Williams and said that he was born on XXXX XXXXXXXX He provided a current address of XXXX XXXXXXXX. He said that he lived with his grandmother and had resided at that address for his entire life. With regard to employment, Williams said that he had been unemployed for two years and that his only source of income was his family. He said that he had lived in the Washington Metropolitan Area for all of his life. He said that he had eleven years of education. He said that he had no other family members living in the area. The report indicates that when interviewed Williams had a physical problem. He said that he had been treated at Greater Southeast Community Hospital for bronchitis and had an injury to his right hand. He denied taking any medication. Williams said that he had used drugs in the past month.

<u>Statements to PSA Representatives on May 31, 2005</u>  Williams was interviewed by Jeremy A. Schuhmacher, another representative of the Pretrial Services Agency, in connection with his initial appearance in District Court on May 31, 2005. A Report was generated following this interview and was provided to you. In this interview Williams provided some of the same information he had previously provided when booked by he police and when interviewed by PSA on October 4, 2003. Williams again provided a full name of Simmeon Dwayne Williams and a date of birth of XXXX XXXXXXXX He provided a home address of XXXX XXXXXXXX. He said that he lived with his grandmother and had resided at that address for ten years. With regard to employment, Williams said that he was unemployed and that his only source of income was his family. He said that he had lived in the Washington Metropolitan Area for all of his life. He said that he had eleven years of education and that he was single. He identified a sister as his only other relative in the area. Williams said he was in good health and and did not report any drug use.

<u>XXXXXXXXXXXX</u>
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXX

Criminal Record. Williams (XXXX XXXXXXXX) has one prior conviction and two pending cases in Superior Court. We will summarize these cases separately, beginning with the pending cases.

Pending Cases. Williams's two pending Superior Court cases are assigned to Assistant United States Attorney Rochelle Rubin and are on Judge Thomas Motley's calendar. His counsel in the Superior Court cases is Farin Mirvahabi, Esq. The two cases may be summarized as follows:

Gun Case. In Criminal No. F-464-05, Williams was indicted for carrying a pistol without a license and unlawful possession of an unregistered firearm and unregistered ammunition. That case stems from Williams's arrest with a loaded gun in the XXXX XXXXXXXX, on January 24, 2005. In the case Williams entered a guilty plea to the indictment on Tuesday, May 24, 2005, and is pending sentencing.

Drug Case. The other case pending against Williams in Superior Court is Criminal No. F-476-05. In that case Williams is under indictment and pending trial for two counts of distribution of cocaine. The case stems from Williams sale of crack cocaine to an undercover officer and to a buyer in the area of XXXX XXXXXXXX, on November 11, 2003.

Prior Conviction. Williams's prior conviction is for attempted carrying a pistol without a license and unlawful possession of unregistered ammunition. That case, Criminal No. F-724-00, stemmed from Williams arrest with a loaded gun on November 24, 2000. The arrest occurred in the XXXX XXXXXXXX, the same location where Williams was arrested on October 3, 2003. Williams was placed on probation by Judge John M. Campbell following a guilty plea, but that probation was revoked on February 18, 2005, and Williams was sentenced to 180 days.

Documents and Tangible Objects. We enclose copies of the police documents pertinent to Williams's arrest on October 3, 2003. Specifically, we enclose the PD 163 (three pages), the PD 251 (three pages), the PD 252 (one page), the PD 47 (one page), the PD 81 (two pages), and an incomplete DEA-7 (one page). Copies of all other documents upon which we may rely at trial will be specified in this letter and also included as enclosures.

Diagrams and Demonstrative Evidence. For use at trial we expect to prepare a formal diagram or photomap of the XXXX XXXXXXXX Should we in fact do so we will disclose them to you before trial. We expect that these exhibits, if any, will be derivative of the evidence previously disclosed or provided to you by way of this letter. We also may use a few aerial photographs.

Photograph of Crack Cocaine. After the drugs were seized from Williams, the officers involved took a Polaroid photograph of them back at the station. A color copy of that Polaroid photograph is enclosed.

911 Call/Radio Runs.  A copy of a cassette tape that captures the 911 call that was made in this case as well as the ensuing police dispatches is enclosed.  A transcript of the tape also is enclosed.

DEA-7.  A copy of the drug analysis done at the DEA's Mid-Atlantic Laboratory is enclosed.  The analysis consists of five pages: the certified lab report revealing that the exhibit in question (Laboratory Number JS-456) was twenty-six plastic bags each of which contained cocaine base and which, in total, weighed 10.6 grams; the DEA-7 form completed by the Metropolitan Police Department when the suspected drugs were sent to the lab; the Forensic Chemist Worksheet (two pages); and a color picture of the drugs showing a large plastic bag, twenty-two small bags of crack cocaine for retail or street-level sale, and four larger bags containing wholesale quantities of crack cocaine.

Scientific Proof/Expert Witnesses.  At trial we expect to call two types of experts, a chemist and a narcotics expert, as follows:

Chemist.  Absent a stipulation, which we would hope we could reach, we would expect at trial to call the chemist who performed the analysis.  His name, as reflected on his report, is Brian Makela.  If necessary, we will forward his resume to you at a later date.

Narcotics Expert.  As noted, twenty-six plastic bags containing 10.6 grams crack cocaine were recovered from Williams.  Twenty-two of these bags contained small user-quantities of crack cocaine, and the other four bags contained small wholesale quantities of crack cocaine.  In addition, $230.00 in cash was recovered from Williams.  At trial we expect to call a narcotics expert.  We expect the expert's testimony to be, in light of the quantity of crack cocaine, its packaging, and other factors, that Williams possessed the crack cocaine with the intent to distribute it.

404(b) Evidence.  Please be on notice that at trial we expect to offer proof, beyond that as charged in the indictment, that Williams for a number of years was engaged in drug trafficking.  We expect our proof to take the following forms:

General proof of drug trafficking.  A larger investigation has established that Williams was engaged for many years in drug trafficking in the XXXX XXXXXXXX neighborhood in Washington, D.C., and more particularly in the area of the XXXX XXXXXXXX, and in the area of the XXXX XXXXXXXX in XXXX XXXXXXXX, Maryland.  We expect to call numerous witnesses who know Williams and who will testify, from firsthand observations and experience, that he was engaged in drug trafficking as described.

Specific proof of drug trafficking.  We also expect to present proof derived from the drug case that presently is pending against Williams in Superior Court.  As noted, that case

stems from Williams sale of crack cocaine to an undercover officer and to a buyer in the area of XXXX XXXXXXXX, on November 11, 2003 – just five weeks after Williams was arrested on XXXX XXXXXXXX with 10.6 grams of crack cocaine.

Gun possession. Through a variety of cooperating witnesses, we expect also to offer proof that Williams possessed firearms while trafficking either crack cocaine or marijuana. We expect to bolster this proof with evidence of Williams guilty pleas in two separate gun cases as previously summarized.

Brady Information. Please be advised that we possess no information that is material and favorable to Williams or that in some way tends to exculpate him. We construe the government's obligations to disclose such information broadly, and thus you may be assured that we will supplement this response promptly should we discover any information that either is material or favorable to Williams or that somehow tends to exculpate him. Pertinent information about government witnesses not elsewhere discussed in this letter -- e.g., criminal convictions or pending criminal cases, pure impeachment material such as prior inconsistent statements, drug or alcohol use, etc. -- will be provided to you at trial.

Giglio Information. The government may call as witnesses certain individuals who have entered guilty pleas and agreed, as part of their pleas, to cooperate with the government by providing truthful testimony. Copies of the plea agreements underlying such guilty pleas will be provided to you at trial.

Jencks Material. Notwithstanding the requirements of the statute, my practice is to disclose Jencks material in advance of trial if doing so does not pose risk to any government witness or harm to the government's case. We will make that decision in this particular case at a later date.

Reverse Discovery. Please note a reverse discovery request for all information and materials subject to production pursuant to Rule 16(b)(1)(A),(B) and (C). So that there may be no misunderstanding on this point, we specifically request an opportunity to inspect and copy or photograph all documents, photographs, and tangible objects which White intends to introduce as evidence in chief at trial. Similarly, we request copies of any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case which you intend to introduce at trial or which were prepared by a witness whom you intend to call at trial. Finally, we request a written summary of any expert testimony you intend to use as evidence at trial, such summary to include the opinions of the experts, the bases and reasons therefor, and the experts' qualifications.

Reverse Jencks. As you know, the provisions of Rule 26.2 apply to the defense as well as to the government. So that there will be no issue at a later date, however, we ask you now to be on notice of our request for all prior statements by any person who will be a witness for Williams at any suppression hearing or at trial.

<u>Plea Offer.</u>  As you know, this prosecution of Williams figures into a much larger investigation.  We are hopeful that Williams might be willing to be debriefed and, through that process, to contribute to that investigation.  Please be advised that unless Williams agrees to be debriefed, and is fully forthright in that debriefing, we are unwilling to extend a plea offer to him.  We ask you to discuss our position with Williams and to let us know if he is willing to meet with us for a debriefing.  A standard debriefing letter is enclosed.  We would be in a position to discuss a possible disposition of this case soon after a debriefing is completed.

    Sincerely,

    KENNETH L. WAINSTEIN
    UNITED STATES ATTORNEY


By:   _____
    MICHAEL D. BRITTIN
    RACHEL CARLSON LIEBER
    Assistant United States Attorneys
    (202) 307-0106 (MDB)
    (202) 353-8055 (RCL)

Enclosures